UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

MOHAMMAD AZAD,                          :

                Petitioner,     :     09 Civ. 2451 (LMM)

        - v -                 :     MEMORANDUM AND ORDER

INTERIM DISTRICT DIRECTOR,              :
New York Immigration & Customs
Enforcement, and Edward Riley,          :
WARDEN OF VARICK STREET DETENTION
CENTER,                                 :

               Respondents.    :

------------------------------------x

McKENNA, D.J.,

**1.**

      Petitioner, a citizen of Bangladesh presently and since August 14, 2008 in the custody of United States Immigration and Customs Enforcement ("ICE") seeks, pursuant to 28 U.S.C. § 2241(c)(3), release from such custody pending execution of a removal order.

      The current removal order appears to be that of February 24, 2003. (See Gov't Letter Mem., June 26, 2009, at 1.) Petitioner was taken into custody on August 14, 2008.  ICE has contacted the local Consulate of Bangladesh numerous times regarding the issuance of travel documents for petitioner (id. at 2-3) and our government brought the matter to the attention of the Embassy of Bangladesh on January 13, 2009.  (Id. at 2.)  On

February 18, 2009 the local Consulate of Bangladesh conducted an interview of petitioner.  (Id.)

**2.**

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory "removal period," during which time the alien normally is held in custody." Zadvydas v. Davis, 533 U.S. 678, 682 (2001).  However, "[a] special statute authorizes further detention if the Government fails to remove the alien during those 90 days." Id.  Specifically, "[a]n alien ordered removed [in many cases including the present one] may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [8 U.S.C. § 1231(a)(3)]."  8 U.S.C. § 1231(a)(6).

In the Supreme Court's "view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699 (citation omitted).

The Supreme Court rejected the argument that "a federal habeas court would have to accept the Government's view about whether the implicit statutory limitation is satisfied in a

particular case," id. at 699, concluding, rather, that "[w]hether
a set of particular circumstances amounts to detention within, or
beyond, a period reasonably necessary to secure removal is
determinative of whether the detention is, or is not, pursuant to
statutory authority," is a question for a federal court to answer.
Id.

> In answering that basic question, the habeas court
> must ask whether the detention in question exceeds
> a period reasonably necessary to secure removal.
> It should measure reasonableness primarily in terms
> of the statute's basic purpose, namely, assuring
> the alien's presence at the moment of removal.
> Thus, if removal is not reasonably foreseeable, the
> court should hold continued detention unreasonable
> and no longer authorized by statute.  In that case,
> of course, the alien's release may and should be
> conditioned on any of the various forms of
> supervised release that are appropriate in the
> circumstances, and the alien may no doubt be
> returned to custody upon a violation of those
> conditions.     And if removal is reasonably
> foreseeable, the habeas court should consider the
> risk of the alien's committing further crimes as a
> factor potentially justifying confinement within
> that reasonable removal period.

Id. at 699-700 (citations omitted).

> In Zadvydas, the Supreme Court created a "presumptively
reasonable period of detention" of six months.  Id. at 701.

> After this 6-month period, once the alien provides
> good reason to believe that there is no significant
> likelihood of removal in the reasonably foreseeable
> future, the Government must respond with evidence
> sufficient   to   rebut   that   showing.      And   for
> detention to remain reasonable, as the period of
> prior postremoval confinement grows, what counts as
> the "reasonably foreseeable future" conversely
> would have to shrink.  This 6-month presumption, of
> course, does not mean that every alien not removed

3

> must be released after six months.  To the
> contrary, an alien may be held in confinement until
> it has been determined that there is no significant
> likelihood of removal in the reasonably foreseeable
> future.

Id. at 699-700 (citations omitted).

**3.**

Some particulars should be noted.  Petitioner entered, and was admitted to, the United States as a non-immigrant student in 1989, but did not attend the university he entered to attend. An application for asylum was denied in 1999.  Orders of removal were entered against him in 1999 and 2003.  He was twice allowed to voluntarily depart, but did not do so.  (Gov't Letter Mem., June 26, 2009, at 1.)  He has no criminal record.

Petitioner is married (since 1995) to a woman who is a permanent legal resident; they have two children, born in 2000 and 2006, both permanent legal residents.  (Supp. to Petition, Aug. 4, 2009, Ex. A, marriage and birth certificates; Petition, Mar. 17, 2009, ¶¶ 6, 8, 13.)  The marriage and birth certificates support petitioner's counsel's statement that petitioner has continuously resided at the same address in Queens, New York City, at least since 1995.

Bangladesh has been governed by an elected democratic government since January, 2009.  (Supp. to Petition, Aug. 3, 2009.)

4

**4.**

Petitioner has been in custody now for a year, twice as long as the 6-month period set by the Supreme Court in <u>Zadvydas</u>. Even if one discounts the September and December 2008 contacts between ICE and the local Consulate of Bangladesh (Gov't Letter Mem., June 26, 2009, at 2) as due to unsettled conditions in Bangladesh, the Embassy of Bangladesh was contacted in January of 2009, and petitioner was interviewed by the Consulate in February of 2009, and the local Consulate of Bangladesh has been contacted by ICE three times in March and April of 2009. Those contacts, as reported by the government, have resulted only in statements that the Consulate "was awaiting confirmation of the information provided in the travel document request." (<u>Id.</u> at 3.) The nature of the information for which confirmation is awaited is not identified.

In the circumstances, and double the six-month period of detention laid down by the Supreme Court having gone by, petitioner has made a showing of "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," <u>Zadvydas</u>, 533 U.S. at 701, and the government must therefore rebut that showing. <u>Id.</u>

ICE, in its periodic reviews of petitioner's detention, and the government, here, rely, in part, on petitioner's failure, twice, to voluntarily depart. However, that is all the record

shows:  there is no suggestion that petitioner attempted to conceal his identify or presence in the United States; he continued to live, under the same name, at the same address.  He has no criminal record.   He does not appear, if released under appropriate conditions, to be a serious flight risk.

The government also argues that petitioner has not been doing enough to press his case with the Consulate of Bangladesh. Petitioner has, however, already been personally interviewed by the Consulate, and, although the government has had contacts with the Consulate, it has not stated that any particular information is missing that petitioner should give the Consulate.

The government says that "this process is often lengthy," but does not give examples specific to Bangladesh; it adds that "the Consulate has not given ICE any reason to believe that a travel document will not issue -- provided that Azad is who he claims to be."  (Gov't Letter Mem., June 26, 2009, at 5.)   The latter statement requires comment.  The government does <u>not</u> say (even if it may suggest) that petitioner is not who he claims to be, nor that that is what the Consulate suspects, or needs clarified.  Beyond that, the negative statement that the Consulate has not given ICE any reason to believe that a travel document <u>will not</u> issue is not equivalent to a statement that the Consulate has given ICE reason to believe that a travel document <u>will issue</u>.

The government has failed to rebut petitioner's showing, the writ is granted, and petitioner is to be released, within 14 days of the date hereof, pending removal on (i) the conditions set forth in 8 U.S.C. § 1231(a)(3) and electronic monitoring as described by petitioner's counsel at oral argument on August 10, 2009.

SO ORDERED.

Dated:  August *19*, 2009

_____
Lawrence M. McKenna
U.S.D.J.

7